

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir :

Opinion No. O-315
Re: Uncertified copies of opinions
in Courts of Civil Appeals.
Are charges therefor fees of
office?

We are in receipt of your letter of February 9th, 1939, wherein you request an opinion as to whether clerks of the Courts of Civil Appeals are required to make charges for uncertified copies of opinions under Article 3924, Revised Civil Statutes, and account for such charges as fees of office.

Article 1836a, Revised Civil Statutes, contains the following:

"Each clerk of a Court of Civil Appeals, and clerk of the Court of Criminal Appeals, each chief deputy clerk, and each stenographer in the office of any such clerk shall receive such compensation, in addition to the salary prescribed by law, as the court may allow, to be paid from fees collected by the clerk of said clerk, but in no event shall the salary plus the additional compensation exceed the following:
"Clerk                          $4,000.00 per year..."

Article 3924, Revised Civil Statutes, reads in part:

"The clerks of the Courts of Civil Appeals, shall receive the following fees:

"Making copies of any papers or records in their offices, including certificate and seal, for each 100 words........................................................10"

"For certificate and seal, where same is necessary.........................................................50"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Article 1834, Revised Statutes, provides that such clerk "shall collect and pay into the State Treasury all costs collected by him, under such regulations as the Comptroller may prescribe and the judges of said Court approve."

The caption to Chapter 463, page 1157, General and Special Laws of the 45th Legislature, reads as follows:

"An Act making an appropriation for the support and maintenance of the Judiciary of the State of Texas for the biennium beginning September 1, 1937, and ending August 31, 1939; requiring certain fees paid to clerks or officers of all Appellate Courts to be deposited monthly in the State Treasury; prescribing certain rules and restrictions respecting the expenditures of appropriations made herein; suspending all laws in conflict herewith; declaring the invalidity of any portion of this Act shall not affect any other portion; and declaring an emergency."

Section 4 of the General Provisions of said Chapter 463, found at page 1167, reads as follows:

"All fees paid to any court for which appropriations are made herein or to any of the clerks, officers or employees of any such court, whether such fees are for official or unofficial copies of opinions, carbon copies, or for other services or documents, shall be and depositied at the close of each month in the General Revenues Fund of the State Treasury and shall be carried as a special account in said fund for the court depositing same, and none of such fees shall be retained by or paid to said clerks, officers or employees. Each court employee whose salary is provided for herein, except porters, shall file, with such court monthly payroll, with the Comptroller at the end of each month an affidavit showing that he has not retained any compensation out of any court fees or other fees received by him or the court during the previous month and showing that all such fees have been deposited in the State Treasury. The Comptroller shall not issue a warrant in payment of the salary of any such employee for any month unless and until the affidavit required herein has been filed for said previous month."



Sections 5 (g) and 5 (i) of the General Provisions of said Chapter 453, found at page 1168, read as follows:

"(g) Each officer, agent or employee of a court named in this Act and entitled to be paid a salary or other compensation out of any appropriation above made shall bepaid by warrant and/or check issued in his or her name and specifically showing the amount of salary or sum due and the services for which the payment is being made (with date or dates and place or places of performance of such services) such warrant and/or check to be endorsed, before payment thereof, by such officer, agent or employee.

"(i) That portion of every appropriation out of State funds or local receipts made herein which is unexpended at the close of the fiscal year for which the appropriation is made shall immediately revert to and become a part of the General Revenue Fund. It is hereby provided that the word 'unexpended' as used in this Act means 'not disbursed nor contracted to be disbursed.'"

Having provided a charge of 10 cents for "making copies of any papers or records in their offices, including certificate and seal," to be made by clerks of Courts of Civil Appeals, we think that in providing a further charge of 50 cents "for certificate and seal, where same is necessary," the legislature contemplated that in certain instances the certificate and seal would not be necessary, and that when such should be the case a person should be at liberty to call on the clerk for a simple copy, without paying 50 cents for the act of certifying and sealing, and without paying for the words in an unwanted certificate at the rate of 10 cents per hundred. Furthermore, we think that public policy would require such an interpretation that the mere omission of the certificate should not deprive the State of its fee.

In reaching the above conclusion upon the provisions of Article 3924 alone, we do not agree with the conclusion expressed in conference opinion No. 2787 of this Department, dated September 26, 1929, written by H. Grady Chandler, Assistant, to D. W. Stallworth. However, we do not find it necessary to overrule such opinion, in view of the fact that Chapter 453, above quoted, has expressly brought such fees into the State Treasury, even if Article 3924 itself did not. The quoted provisions of Chapter 453 are amply supported by the caption thereof, a fact not existing with reference to the bill considered by Mr. Chandler.

We know of nothing which would invalidate such provisions as those mentioned in said Chapter 463, if Article 3, Section 35, of the Constitution of Texas, is satisfied.

The effect of Section 4, and Sections 6 (g) and (1) of Chapter 463, is as follows:  (1)  Certain fees - some of which may have been made such for the first time - are required to be deposited monthly in the State Treasury, where the same is set up in a special amount;  (2) certain officers are paid out of such fund; and, (3) any balance is placed in the General Revenue Fund.

Such fees, along with other sums, are thus appropriated by said Chapter 463 to the support of the judiciary.  The one main general purpose of the Act, the financing of the judiciary, is thus accomplished, and we do not believe there is any impingement upon Article 3, Section 35, of the Constitution, requiring that a bill shall contain but one subject.

Quotation is as follows from the opinion of the Commission of Appeals in Bitter vs. Bexar County, 11 S. W. (2d) 163:

"It is, of course, a general rule that liberal construction will be indulged so as to aid conformance of a title to constitutional requirements; e. g., if in the caption a purpose be but generally stated, that gives sufficient notice that all related and incidental matters may have attention in the body of the act; statements of the ultimate object will include warning ofppresence of details appropriate to achievement of the purpose.  Johnson vs. Martin, 75 Tex. 33, 12 S. A. 321; Doeppenschmidt v. I & G. N. Ry. Co., 100 Tex. 554, 101 S. W. 1080;  M. K. & T. Ry. Co. v. State, 102 Tex. 153, 113 S. W. 916.  Likewise, the two-subject inhibition (section 35, art. 3] is observed if the two things have mutual relevancy or individual relevancy to accomplishment of a general purpose."

The same rule was expressed in the case of Stuard vs. Thompson, 251 S. W. 277, as follows:

"This provision of the Constitution, or similar ones, are to be found in many, of not all, of our state Constitutions, and has frequently been the subject of the judicial investigation and scrutiny.  The courts

have uniformily refused to adopt a construction which would inevitably tend to the serious embarrassment of legislation, and where the several provisions of the act are fairly indicated in the general object, as stated in the title, the several sections are given a liberal construction. The general purpose of the provision is fully accomplished where the law has but one general object, which is fairly indicated by its title; and the generality of the title is not objectionable, so long as it is not made a cover to legislation incongruous in itself, and which by fair intendment can be considered as having a necessary and proper connection."

These case follow the rule stated by Chief Justice Roberts in the case of Giddings vs. San Antonio, 47 Tex. 548, as follows:

"While this has been regarded as the settled rule of construction here, in its application the most liberal construction has been given by the Supreme Court of this State, in accordance with the general current of authority, to make the whole law constitutional where the part objected to as infringing this provision of the Constitution could be considered as appropriately connected with or subsidiary to the main object of the act as expressed in the title........"

In our opinion, your question requires an affirmative answer.

The letter opinion of this Department, dated August 26, 1935, written by Scott Gaines, Assistant, to E. L. Garrett, is overruled.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

Glenn R. Lewis
Assistant

GRL:N:bg

APPROVED

ATTORNEY GENERAL OF TEXAS

GERALD MANN (S)

